F I L E D

APR - 1 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BETTY J. DAVIS,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        1:09cv485 (LMB/TRJ)
                                   )
JANET NAPOLITANO, Secretary        )
      United States Department of  )
      Homeland Security,           )
                                   )
        Defendant.                 )

### MEMORANDUM OPINION

Plaintiff Betty J. Davis, an employee of the United States Department of Homeland Security, has sued her employer for employment discrimination based on race and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII"). Before the Court is the defendant's Motion for Summary Judgment [86]. After the Court held oral argument, the defendant's Motion was granted. This memorandum opinion expands upon the reasons for that decision.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1985). In ruling on a motion for summary judgment, a court should accept the evidence of the nonmovant, and all justifiable inferences must be drawn in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986).

## I. BACKGROUND

This action arises from plaintiff's employment with the
Transportation Security Administration ("TSA"). The plaintiff had
originally been employed as the Manager for Budget and Finance in
the Office of Civil Aviation Security at the Federal Aviation
Administration ("FAA"), within the Department of Transportation
("DOT"). In December 2001, she, along with other employees, was
transferred to the Office of the Secretary of Transportation to
work on the formation of the TSA, then in its infancy. The
plaintiff's role was to help construct the original TSA budget,
attend senior-level meetings, and provide financial management
services. In March 2002, Robert Gardner, a white male, was hired
as the Chief Financial Officer ("CFO") of the TSA. He appointed
the plaintiff as the Acting Deputy CFO.[1] Although there is a
dispute over what duties she performed in that position,[2] she
appears to have had some decision-making authority, attended high
level meetings, stepped in for the CFO in his absence, and
maintained contracts.

---

[1] Although plaintiff's position was titled Acting Deputy
CFO, her official title of record for personnel purposes was
"Program Analysis Officer/Special Assistant." The record
indicates that this was the position the plaintiff held when she
was at the DOT before her transfer to the TSA and she remained so
classified through her tenure at TSA, including through the
present.

[2] This dispute is laid out in more detail in the analysis
section infra.

2

In early 2002, Gardner announced that he would be converting the Acting Deputy CFO position to a permanent position in September of that year. However, that ultimately did not happen and in November 2002, when the plaintiff had heard nothing more about the position, she met with Gardner to discuss her potential for advancement. In that meeting, he told her that people had commented that she had a negative attitude.[3] Plaintiff asked him "why is it that African-Americans have an attitude problem while non-African-Americans have a bad day." Davis Dep. at 54. Gardner replied that the comment had nothing to do with her race. Gardner Dep. at 31. Plaintiff thereafter expressed concern about the lack of minority representation in the professional and managerial positions at the TSA. Compl. at ¶ 10. This exchange about race appears to be the only incident of plaintiff complaining about any race-based issue until she filed her first EEO complaint in May 2004.

In March 2003, the TSA was moved from the DOT to the Department of Homeland Security ("DHS"), resulting in a mass transfer of employees, including the plaintiff. Although she maintained her permanent DOT position title, "Program Analysis Officer/Special Assistant" ("Special Assistant"), the plaintiff's

---

[3] Although plaintiff's case partially rests on an assumption that she believed this comment was racial, she admitted in her deposition that she believes these statements were based on her tight budget management style and her unwillingness to sign every budget request that crossed her desk. Davis Dep. at 64-65.

duties and responsibilities continued to be consistent with what she had been doing as Acting Deputy CFO: monitoring contracts, liaising with the DOT and the FAA, and attending meetings in the CFO's absence. Davis Dep. at 44.

In April 2003, the TSA advertised openings for two positions, Deputy CFO and Director of Budget and Performance ("DBP"), both of which were Transportation Security Executive Service ("TSES") positions, the highest level of employment in the agency. For the DBP position, a two-step selection process was used. First, a panel of three persons reviewed and rated all the applications.[4] The scores were then used to compile a Best Qualified List ("BQL"), from which Gardner, the selecting official, would choose. None of the three members of the rating panel[5] knew the plaintiff's race or were aware of the comments she made to Gardner in 2002 about race. Each member was to rate the candidates on a scale of one to four on each of four criteria. As the selecting official, Gardner issued the criteria to guide the rating panel.

The plaintiff received a total of 40 out of 48 possible

---

[4] At the recommendation of Human Resources, Gardner solicited at least two panelists from outside the agency. Gardner Dep. at 73-75.

[5] The members of the panel were Winona Varnon (an African-American female SES member at the Office of Personnel Managment), Mikki Atsatt (a female SES member, Deputy Budget Director at the Department of Justice), and Martin Rajk (a white male SES member internal to the agency with CFO experience).

4

points and ranked seventh among the 33 candidates who applied for the position. Mary Ann Woodson, who was eventually selected, received 48 out of 48 points and ranked first. Eugenia Crowe, an African-American female Human Resources ("HR") executive, prepared the BQL that consisted of the top five candidates. Crowe chose to place only five candidates on the BQL because none of those candidates received a single rating below a three. Because she had received two ratings below a three, the plaintiff was not on the list. Gardner interviewed the five BQL candidates and one non-compete candidate and selected Woodson, a white female, on August 11, 2003.

On September 26, 2003, a BQL was prepared for the Deputy CFO position. That BQL included the plaintiff. However, Gardner chose not to make a selection and, on November 7, 2003, he proposed abolishing the Deputy CFO position as part of an overall reorganization. Along with the Deputy CFO position, Gardner also proposed eliminating the Deputy Chief Administrative Officer, another TSES position, in an effort to "flatten" the structure of the office so that it would run more efficiently. Gale Rossides, Chief Support Systems Officer, approved the reorganization, including the elimination of these positions, on November 10, 2003.[6]

_____

[6] Although the complaint included a claim based on the abolition of the Deputy CFO position, the Court dismissed that claim at a Motion to Dismiss hearing in September 2009 because

5

On January 23, 2004, Gardner, Chief Staff Officer Barbara Atherton, and HR Specialist Martina Johnson met with the plaintiff to inform her that the Deputy CFO position had been abolished. At this time, plaintiff was assigned back to her original formal title, Special Assistant, and assigned to the CFO front office. The extent of her duties in that position is disputed. The defendant claims that she continued to work on projects similar to those she had as Acting Deputy CFO, including conducting an overtime study, coordinating the air marshals, and attending weekly staff meetings and certain agency-wide meetings. Plaintiff asserts that her duties were much less extensive and that she was largely isolated. Plaintiff filed an EEO claim based on this "demotion" on May 14, 2004.[7]

Woodson remained in the DBP position for only a few months, leaving to become budget director for the entire DHS. On August 30, 2004, Marianna Merritt, a white female, was placed in the position temporarily. A vacancy announcement for the permanent DBP position was posted and in November 2004, both Merritt and the plaintiff applied for the position, and both made the BQL. By March 2005, Gardner had left the TSA. He was replaced by David

there was no support for the proposition that it was racially motivated, not budget-motivated.

[7] After receiving a Final Agency Decision finding no probable cause of discrimination or retaliation, she appealed. The appeal was later consolidated with an appeal of her second EEO claim, discussed infra, and the agency decision was upheld.

Nicholson, a TSES member, who became the selecting official for the DBP position. In April 2005, he interviewed the candidates and ultimately chose Merritt.[8] He explained in his deposition that although both Merritt and the plaintiff were qualified, Merritt performed slightly better in the interview. To be placed permanently in the TSES position, the Office of Personnel Management ("OPM") had to approve Merritt's employment package, which had to be submitted within 90 days of her selection. Due to a late submission of the package, OPM rejected the package, resulting in Merritt's appointment not being permanent. She served as DBP temporarily for another two and a half years,[9] until September 2006 when the position was reopened for permanent selection. Although the plaintiff disputes that Merritt performed the job well during that time, there is no evidence in the record to support that opinion.

For this selection process, Nicholson issued rating criteria identical to those previously used for the DBP position. The plaintiff applied for the position again. The rating panel for this selection process was made up of Elizabeth Buchanan (Deputy Chief Counsel for General Law), Susan Tracy (Chief Administrative

---

[8] Plaintiff did not file an EEO complaint for this selection, and therefore this particular selection is not the subject of this action.

[9] Because employees can serve on an "acting" basis for up to three years, Merritt was kept in the position on an acting basis for the full three years.

Officer), and Richard Gunderson (Assistant Administrator for Acquisitions), all of whom are white and were from the TSA. The evidence shows that at least two of the panelists knew the plaintiff's race and were aware of her previous EEO activity. The panel awarded the plaintiff 32 out of 36 possible points and rated Merritt at 36 out of 36. As a result, both were put on the five-person BQL. Nicholson, along with Gunderson and Buchanan, interviewed all five candidates. They unanimously chose Merritt. Merritt's selection was approved by the Executive Resource Council and she was permanently placed in the job on April 1, 2007.

Plaintiff contacted her EEO Counselor on April 20, 2007 and filed a formal complaint on August 15, 2007, alleging retaliation and discrimination in her non-selection for the DBP position. She was represented in that administrative process by her current attorney. On July 28, 2008, the agency issued a final decision finding no probable cause for retaliation or discrimination. This decision was sustained on February 12, 2009 by the Office of Federal Operations.

On May 5, 2009, the plaintiff timely filed her complaint pursuant to Title VII, which included one count of discrimination and one count of retaliation for each of five discrete events: (1) the abolition of the Deputy CFO position, (2) her alleged demotion, (3) her first non-selection for the DBP position, (4) her third non-selection for the DBP position, and (5) her non-

8

receipt of a performance bonus.[10] The defendant filed a Motion to Dismiss that was heard on September 18, 2009. The Court dismissed all claims based on the first and last events, but not on the second, third, and fourth events.

## II. Discussion

A Title VII plaintiff can show that she has been the victim of discrimination or retaliation either through direct evidence or through the burden-shifting calculus established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See also</u> <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004)(en banc); <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365(4th Cir. 1985)(applying the burden-shifting scheme to retaliation claims), abrogated on other grounds. This plaintiff must use the indirect evidence scheme, as she does not present direct evidence either of discrimination or retaliation.

The Fourth Circuit has required that a plaintiff must establish four elements to make a *prima facie* showing of discrimination under <u>McDonnell Douglas</u>: "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse

_____

[10] Plaintiff's claims based on her January 2008 non-receipt of a performance bonus were dismissed by the Court in September 2009 because the plaintiff had not actually applied for a bonus and because she never received a final EEO decision on her complaint related to this bonus, and therefore had not exhausted her administrative remedies.

employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Hill, 354 F.3d at 285.

Application of the McDonnell Douglas framework has been tailored to the type of claim being alleged under Title VII. When the plaintiff alleges failure to promote, her *prima facie* case requires establishing that: (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for a job for which the employer was seeking applicants; (3) the plaintiff was rejected despite her qualifications; and (4) the position either remained open or was given to someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. Alvarado v. Board of Trustees of Montgomery Comm. College, 928 F.2d 118, 121 (4th Cir. 1991)(internal citations omitted). To establish a *prima facie* case for a Title VII retaliation claim, the Fourth Circuit requires a plaintiff to establish three elements: (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and (3) a causal connection between the protected activity and the asserted action. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(citing Williams v. Cerberonics, Inc, 871 F.2d 452(4th Cir. 1989)).

Under the McDonnell Douglas framework, once the plaintiff makes her *prima facie* case, the burden shifts to the defendant to

show it had a legitimate, non-discriminatory or non-retaliatory reason for the employment action. If the employer does so, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the employer's stated reason is pretextual.

The plaintiff alleges three incidents in which she was the victim of both discrimination and retaliation: (1) demotion to the Special Assistant position; (2) non-selection for the DBP position in the first application process; and (3) non-selection for the DBP position in the third application process.

## A. Demotion

### i. Discrimination

The parties do not dispute that the plaintiff satisfies the first element of the *prima facie* case in that she is a member of a protected class, African-American. However, the parties vigorously dispute that any adverse action was taken against her. The government argues that she was not demoted but only assigned back to her original permanent position. "A reassignment case only forms the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." James v. Booz-Allen & Hamilton, 368 F.3d 371, 376 (4th Cir. 2004) (quoting Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999)). Significant detrimental effects under Title VII are "any decrease in compensation, job title, level or responsibility, or opportunity for promotion." Id. Moreover, a reassignment does

not constitute a demotion simply because the employee finds his or her new duties less appealing, but rather requires that there is some substantial detrimental effect on the employee's "opportunities for promotion or professional development." Id.

When the plaintiff was not selected for the first DBP opening and the Deputy CFO position was eliminated, she was returned to her title as Special Assistant, with no change in pay grade or salary.  Plaintiff argues that even comparing her original duties as a Special Assistant at the TSA when it was still part of the DOT to those she was given after she was returned to the title establishes that she was demoted. Plaintiff maintains that as Special Assistant she initially supervised several employees, led the formulation and execution of the Civil Aviation Security budget, monitored progress and spending, and served as the audit liaison to the Office of Inspector General and General Accounting Office. Pl.'s Opp. at 15-16. As Acting Deputy CFO, she managed the TSA's budget, participated in the development of budgetary policies and procedures, advised the "upper echelon of management", provided agency-wide policy guidance, supervised certain staff members, represented the CFO at executive meetings on a regular basis, and participated in rulemaking and security directives. Pl.'s Opp. at 16-17. Defendant contends that plaintiff's duties as Acting Deputy CFO were amorphous, depended entirely on assignments from the CFO,

and had no supervisory component.[11]

It is hotly disputed whether, when returned to the Special Assistant position, plaintiff's responsibilities and opportunity for advancement diminished. Gardner admitted in his deposition that the plaintiff lost line authority and any supervisory role she may have had. Def. Mot. at Ex. 1, p. 113-14. In addition, plaintiff began reporting to Barbara Atherton, a Band-K-level employee in a position lower than that which the plaintiff had previously held. She no longer attended executive meetings, had very few responsibilities, had no agency-wide responsibilities, and reports being increasingly isolated. Pl.'s Opp. at 17-18. Mark Kerski, the Chief Staff Officer to whom plaintiff reported, wrote that "Special Assistant does not hold the same recognition as might some other series and titles." Pl. Opp. at Ex. 30. Although it is unquestionably a close call, drawing all inferences in the plaintiff's favor the Court finds that she was demoted. She therefore has made out her *prima facie* case.

In response, the defendant offers a reasonable explanation

---

[11] Plaintiff's supervisory duties are disputed. Plaintiff admits that the senior directors tended to report directly to the CFO and not to her, although the Director of Finance, Judy Harrison, often came to her for reports and advice. Def. Mot. for Summ. J., Ex. 3; Davis Dep. at 49-51. However, an organizational chart indicates that the plaintiff was the direct superior of the three financial directors. Pl.'s Mot. Ex. 35. As such, plaintiff originally expected the directors to report to her because she was directly above them in the chain of command, but this never materialized. Davis Dep. at 49.

for the demotion: there simply was no other job for the plaintiff. The law of the case is that the abolition of the Deputy CFO position was not based on discriminatory motive, but upon reasonable organizational and budgetary considerations. Therefore, the plaintiff cannot argue that the act of moving her to another position was motivated by race-based discrimination. The agency could have terminated her entirely,[12] but instead created what it believed was a suitable position for her, as a Special Assistant in the front office of the CFO. This appears to be a reasonable, non-discriminatory explanation for the demotion.

When the burden shifts back to the plaintiff, she fails to provide any evidence that the reorganization of the department, including the elimination of certain positions, was pretextual. Instead, she argues that the defendant should have continued to give her K-Band level projects and allowed her more responsibility. This argument fails because the evidence shows several attempts by Nicholson and Kerski to involve the plaintiff in various projects and details that she turned down because of a lack of interest in the subject matter of those assignments. Nicholson Dep. at 101-115. Plaintiff explains that these opportunities were not within the budget field and would not have

---

[12] At oral argument, plaintiff's counsel was asked whether her client could have been terminated. She did not concede that the government had no right to terminate the plaintiff, but instead described the cumbersome procedural steps it would have been required to take in order to do so.

enhanced her career path, but presents no evidence that duties and opportunities of interest to her were available. Moreover, plaintiff offers no evidence that the move was racially-motivated.[13] Most telling, the plaintiff made no claim in her deposition that she believed the demotion was motivated by race-based discrimination. On this record, there is no evidence that the reasons stated for the demotion are pretextual, and therefore summary judgment has been granted to the defendant on this issue.

### ii. Retaliation

As the Court found <u>supra</u>, the defendant did take an adverse employment action against the plaintiff in demoting her. However, to make out a *prima facie* case of retaliation, plaintiff must also prove that she engaged in a protected activity and that a causal connection exists between that activity and her demotion. The plaintiff alleges that Gardner's decision to assign her to the Special Assistant position was motivated by retaliation for her comments to him in November 2002, concerning the lack of African-Americans in professional and managerial positions within the agency and unduly attributing attitude problems to African-

---

[13] The plaintiff points to bare statistics that show a lack of African-American representation in TSES positions within the office, but fails to explain how many TSES positions there were or whether other African-Americans even applied for those positions and were turned down.

Americans.[14] Whether this one conversation with Gardner qualifies as protected activity is disputed by the parties, however, the Fourth Circuit has recognized that a formal EEO complaint is not the only protected activity and that other "legitimate opposition activity" can qualify as protected activity for purposes of Title VII retaliation claims. <u>Laughlin v. Metropolitan Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998). Plaintiff argues that her comments to Gardner qualify as opposition activity, defined by the Fourth Circuit as "staging informal protests and voicing one's opinion in order to bring attention to an employer's discriminatory activities." <u>Booth v. Maryland</u>, 2009 WL 2158096, *8 (4th Cir. 2009)(<u>citing</u> <u>Laughlin</u>, 149 F.3d at 259). It is questionable whether this one observation to Gardner qualifies as legitimate opposition activity, as there is no indication that the plaintiff followed up on her concern and spoke to anyone other than Gardner. The statements appear more akin to passing commentary than to "protests... to bring attention" to discrimination.

However, even if these comments satisfied the protected activity prong of a *prima facie* case, the plaintiff fails to establish any reasonable inference of a causal connection between

_____

[14] The plaintiff did not file her first EEO complaint until after she was moved to the Special Assistant position in January 2004 and therefore cannot rely on any formal complaint as her protected activity.

the comments and her alleged demotion. Although the comments were made to Gardner, the person who demoted her, the plaintiff proffers no other evidence of a causal connection. Instead, she relies on the Fourth Circuit's holding that a court can infer a causal connection based on a short length of time between the employer learning of the protected activity and the adverse action. However, the Fourth Circuit has likewise explained that if the period of time is too long, it will be insufficient to establish retaliation absent other evidence. See, e.g., Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(holding that a thirteen month lag between an EEO charge and termination is too long, standing alone, to establish causation); Clark County Sch. District v. Breeden, 532 U.S. 268, 272 (2001)(holding that to rely on temporal proximity alone to establish causation, the time of the protected activity and adverse action must be "very close" in proximity and citing cases that view three or four months as too long). Plaintiff's comments were made about 15 months before she was demoted, a lag in time too long to establish causation under the Fourth Circuit case law. Because the plaintiff has provided no evidence to support a causal connection between the protected activity and the adverse employment action, she fails to make out a *prima facie* case in connection with her demotion. For these reasons, summary judgment has been granted to the defendant on this claim.

17

B. First Non-Selection for Promotion

    i. Discrimination

The plaintiff alleges that her non-selection for the DBP position when she first applied was motivated by race-based discrimination. Under <u>Alvarado</u>, the plaintiff fails to make out her *prima facie* case for this claim. As discussed <u>supra</u>, it is undisputed that she is a member of a protected class. Although she did apply for the DBP position and a member outside of her protected class, Mary Ann Woodson, was selected, the plaintiff has failed to show that she was qualified for the position.

The evidence unequivocally shows that the plaintiff was initially rated by an impartial panel, which was appropriately selected and diverse, including one African-American female. None of the panel members had knowledge of the plaintiff's race or her prior complaints to Gardner regarding race.[15] After the ratings were complete, Eugenia Crowe, an African-American female HR representative, put together the BQL. As the government points out, "an inference of discrimination is highly unlikely where the actor is in the same protected class as Plaintiff." <u>See</u> <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991); <u>Williams v. Alternative Behavioral Servs.</u>, 2004 WL 3258906, at *7 (E.D.Va. 2004). Crowe made the decision to place only the top

---

[15] Moreover, two of the three panelists were not employed within the TSA.

five candidates on the BQL, because those candidates had no ratings below a three on the four-point scale. Although Gardner was the selecting official, he never had an opportunity to choose the plaintiff because her name was not on the BQL. The only people qualified for ultimate selection were those whose names were on the BQL. Therefore, plaintiff has failed to make out a *prima facie* case of discrimination for her first non-selection.

The plaintiff attempts to offer an alternative explanation for the panel's scores: that Caucasian employees were regularly placed in management positions on an "acting" basis before the permanent selection occurred, giving those persons an advantage in the rating process and subsequent interviews by enhancing their experience with respect to the position and making them more familiar with particular aspects of the job. She points to the government repeatedly citing experience as the basis for its selections. Plaintiff contends that this practice is inherently discriminatory because it gives white employees a consistent leg up in the selection process.[16]

Plaintiff's theory is inapplicable to her non-selection because the selectee, Woodson, was not the Acting DBP at the time

---

[16] In support of this contention, the plaintiff states in her complaint that three other TSES positions within the Office of Finance and Administration were temporarily filled by white employees who were later permanently placed into those positions. She also states that seven other white agency employees who worked on the TSA startup were put into TSES positions, many performing the "acting" duties of their jobs beforehand.

of her selection, nor has plaintiff presented evidence that
Woodson was acting in any other position at the time of the
selection. Moreover, there is no evidence in this record that any
of the other candidates on the BQL had been in an acting position
before they applied for the DBP position. In addition, the
plaintiff has made no showing that her rating for this position
was lower due to a lack of experience. To the contrary, the
rating panel gave her high marks– threes and fours - for both of
the experience-based criteria. Gov. Ex.6, Att. B. Applicants were
placed on the BQL only if they had no ratings below a three. The
plaintiff had two ratings of two, which was not for experience,
but for oral and written communication skills. _Id._ Therefore, the
plaintiff fails to make out a *prima facie* case of discrimination
playing any role in her non-selection for this position and
summary judgment has been granted for the defendant on this
claim.

### ii. Retaliation

The plaintiff also contends that her non-selection for the
DBP position was retaliation for the comments she made to Gardner
in November 2002 about race. Plaintiff has made out the first two
elements of her *prima facie* case, assuming, as _supra_, that her
comments constitute protected activity (which remains
questionable) and because her non-selection for the DBP position
is an adverse employment action. However, she fails to present

20

any evidence of a causal connection between her statements to Gardner and her non-selection because there is no evidence that any of the rating panel members or Crowe, who prepared the BQL, knew about the plaintiff's conversation with Gardner. As discussed <u>supra</u>, although Gardner was the selecting official, the plaintiff had been weeded out by the time the process reached him.[17] As such, the plaintiff also fails to make out a *prima facie* case of retaliation for this non-selection and summary judgment has been granted to the defendant on this claim.

### C. Third Non-Selection for Promotion

#### i. Discrimination

The plaintiff has made out a *prima facie* case of discrimination for her third non-selection for the DBP position. It is undisputed that she is a member of a protected class, that she applied for and was qualified for[18] the DBP position, that she was rejected despite her qualifications, and that the selected candidate, Marianna Merritt, was Caucasian.

---

[17] In addition, the nine month lapse between the comments and the plaintiff's non-selection is not sufficiently small to establish a causal connection.

[18] The government does not dispute that the plaintiff was qualified for the position, particularly because she was placed on the BQL during this selection process. In addition, the evidence indicates that the plaintiff had an extensive background in budget preparation and oversight and familiarity with the TSA budget in particular. Moreover, several of her colleagues, including Lynn Osmus, Jon Butterbaugh, and Juerin Tooren, believed that she was more than qualified for the position. Pl.'s Opp. at 23.

The burden then shifts to the government to provide a non-discriminatory explanation for its selection. The government states that Merritt was selected because of her superb qualifications, her ratings by the panel, her experience, and her performance while temporarily in the job. Merritt had been in the position for which she was applying for three years before the selection process, and had been placed in that position competitively, beating out the plaintiff for the position during the second DBP selection process. Plaintiff never filed an EEO complaint based on that non-selection and there is no evidence that she believed Merritt's initial selection for the DBP position was motivated by race. Moreover, the only reason that the job opened up in 2007 was because the agency failed to get the necessary paperwork to OPM on time. These proffered reasons for selecting Merritt are reasonable and non-discriminatory.

Not only has the defendant offered legitimate non-discriminatory reasons for selecting Merritt over the plaintiff, the plaintiff has no evidence to rebut the defendant's reasons or to show pretext. The plaintiff admits that Merritt was qualified for the position, although she does dispute the quality of her budget management during the three years she temporarily held the position. The plaintiff did not complain or assert that discrimination had been a factor in Merritt's original selection, and most importantly, the plaintiff admitted in her deposition

that she was "not surprised" Merritt was selected "[b]ecause Mr. Nicholson, Mr. Kerski, and Ms. Merritt all came from Coast Guard and had worked together previously." Davis Dep. at 112. Familiarity with certain candidates, although often not a wise basis for personnel choices, is not a racially discriminatory basis. As such, plaintiff has failed to meet her burden and summary judgment has been granted to the defendant on this claim.

### ii. Retaliation

In her final retaliation claim, the plaintiff again fails to establish the required causal connection between the protected activity and her non-selection.[19] In May 2004, the plaintiff filed an EEO claim, the protected activity forming the basis of this retaliation claim. However, her non-selection for the DBP position did not occur until April 2007, nearly three years after she filed her EEO complaint. The plaintiff argues that the continued inquiries and interviews associated with the EEO process kept the complaint fresh in the minds of those involved, making the time lapse shorter than it appears. Although potentially a compelling theory, it is not persuasive in light of the facts of this case. Even if plaintiff's theory established a causal connection, making out a *prima facie* case of retaliation,

---

[19] Plaintiff has established the first two elements of her *prima facie* case because she has filed a formal EEO complaint, a protected activity, and she was not selected for the DBP position, an adverse employment action.

the evidence discussed _supra_, which plaintiff has failed to rebut, as to why Merritt was selected over the plaintiff overwhelmingly demonstrates that the selection was made for legitimate reasons, not motivated by retaliation. Therefore, summary judgment has been granted to the defendant for this retaliation claim.

### III. Conclusion

For the reasons stated above, defendant's Motion for Summary Judgment [86] has been GRANTED. An appropriate order will issue with this opinion.

Entered this $\underline{1^{st}}$ day of April, 2010.


Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge